EMPLOYERS REINSURANCE
CORPORATION, Appellee,

v.

MUTUAL MEDICAL PLANS, INC.,
Southeast Iowa Schools Health Care
Plan Board of Trustees and K. Lee Arrowsmith, Defendants,

and

R. Leon Beaty, Appellant.

No. 92–900.

Supreme Court of Iowa.

Aug. 25, 1993.

James W. Miller and Mitchell L. Taylor of Cray, Goddard and Miller, Burlington, for appellant.

John M. Wharton and Joseph M. Barron, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and LAVORATO, JJ.

HARRIS, Justice.

The question is whether an "errors and omissions" policy provided liability coverage for an insured, a licensed insurance agent. The underlying suit sought damages from the insured for claimed tortious interference with contract and tortious interference with a prospective advantage. The trial court found that the policy provided no duty to defend and indemnify, and we agree.

This appeal by R. Leon Beaty (Beaty) is from a judgment declaring that Employers Reinsurance Company (ERC) has no duty to defend or indemnify Beaty in a suit brought against him by Mutual Medical Plans, Inc. (Mutual Medical). Mutual Medical's suit was brought in federal court against the Southeast Iowa Schools Health Care Plan Board of Trustees (board), K. Lee Arrowsmith (Arrowsmith) (president of the board), Beaty, and William J. Kelly (Kelly). The following statement of facts, with minor editorial changes, is taken substantially from the careful findings of the trial court. On our de novo review we adopt them as our own.

Beaty is an experienced insurance agent licensed to sell, among other types, life and

health insurance. Involved in insurance sales since 1975, he has brokerage contracts with numerous insurance companies. Kelly has been with an insurance agency in Burlington, Iowa, since 1966, and is presently the office manager. Since Beaty entered the insurance business he and Kelly have worked together on various insurance matters. They did so through informal joint ventures in which they divided the sales commissions.

In the early 1980s the City of Burlington and Des Moines County discussed with Beaty and Kelly the possibility of "self-insuring"—the creation of a self-funded plan or plans to provide employees with health coverage, in order to satisfy various collective bargaining agreements. A joint city/county self-funded health care plan was established in 1983. This was the first such plan Beaty and Kelly had assisted in starting.[1]

Self-funded insurance plans require someone or some entity to perform administrative duties and to review and adjudicate claims. These tasks are typically performed by what in the trade are called third-party administrators (TPAs). TPAs thus perform a role typically assumed by an insurance company. At the suggestion of Beaty and Kelly, the city and county retained Mutual Medical, an Illinois corporation, as TPA for the plan.

In 1983 Beaty and Kelly formed a partnership, Employee Benefit Systems (EBS), which later acted as a TPA for dental claims brought pursuant to the city/county plan. In October of 1987, Beaty and Kelly incorporated EBS as Employee Benefit Systems Corporation (EBSC).

Beginning in or just prior to early 1986, Beaty and Kelly assisted various public and parochial schools in southeast Iowa, later joined by an area education agency and a local community college (collectively "the group"), in forming a self-funded health benefits plan entitled "Southeast Iowa Schools Health Care Plan" (the plan). The plan was instituted July 1, 1987. On July 16, 1987, Mutual Medical and the board entered into a TPA contract, effective July 1, 1987, for administration by Mutual Medical of medical claims brought under the plan. The contract was to run for three years or until termination of the self-funded plan. EBSC (Beatty and Kelly's partnership) contracted with the board to serve as agents in connection with the plan.

Plan participants—employees of the various schools—lodged complaints relating to the timeliness and adequacy of Mutual Medical's performance of its obligations under the TPA contract. Dissatisfaction primarily involved slow claims adjudication and rude or discourteous behavior by Mutual Medical employees. The board discussed these problems with Beaty and Kelly, who, in their roles as agents for the plan, were expected to help resolve the problems. After unsuccessful attempts to improve Mutual Medical's performance, Beaty and Kelly met with a Mutual Medical representative who, it is said, indicated that Mutual Medical would voluntarily withdraw from the TPA contract.

Beaty and Kelly thereafter recommended to the board that the contract with Mutual Medical "not be renewed" after June 30, 1989, one year prior to its scheduled termination. Upon Beaty and Kelly's instigation the board discussed the possibility of switching from Mutual Medical to EBSC for TPA services.

The board unanimously terminated the contract with Mutual Medical, and enlisted EBSC to act as TPA, beginning July 1,

---

**1.** As the agents for the plan Beaty and Kelly were to provide advice and guidance. Iowa law requires stop-loss insurance coverage to be carried by public entities which self-fund their insurance plans. Beaty and Kelly sold the stop-loss coverage for the plan, and as the insurance agents for the plan were apparently able to secure the right to sell plan participants term life, long-term disability and a number of other insurance products. Because self-funded insurance plans often involve more than one employer and a sizable number of employees, they can be very advantageous to insurance agents such as Beaty and Kelly. This is because the plans allow them to maintain a large and stable group of potential customers for the marketing and selling of all insurance products.

Beaty and Kelly had a similar role in the 1986 creation of a self-funded insurance plan for the Burlington Community School District.

1989. When Mutual Medical was advised of the board's decision it denied any agreement to terminate the contract, and asserted it would hold EBSC, Beaty, and Kelly liable for any damages resulting from interference with its contractual relationship.

The board later met and again voted unanimously to terminate the contract with Mutual Medical on grounds of unsatisfactory performance. On the same date the board contracted with EBSC for administration of medical claims brought under the plan.

Mutual Medical then brought the underlying suit in federal court in Illinois, seeking compensatory and punitive damages from Beaty for "tortious interference with contract." The federal suit alleges that Beaty and Kelly wrongfully induced the board to terminate and breach the contractual relationship between Mutual Medical and the group, and to shift this business to EBSC. Mutual Medical also seeks compensatory and punitive damages from Beaty for "tortious interference with prospective advantage." It asserts that its long-standing relationship with the group and the individual trustees created a reasonable expectation on its part of future contractual relations with the group, and that Beaty and Kelly wrongfully and maliciously interfered with this expectation.

The policy upon which the present suit is based is called an "Insurance Agents and Brokers Professional Liability Insurance Policy." It is a type commonly referred to as an "errors and omissions" policy, or a "professional liability" policy. There is no dispute that Beaty is an insured under it, and that the policy was in full force and effect when Mutual Medical filed its suit.

ERC brought the present declaratory judgment action, seeking a ruling that (1) the policy does not provide coverage to Beaty for his legal liability, if any, arising out of any of the events or transactions set forth in the Mutual Medical lawsuit, and (2) as a result ERC has no duty to defend or indemnify Beaty in the Mutual Medical lawsuit. In holding that ERC has no duty to defend or indemnify Beaty, the trial court reasoned that Mutual Medical alleged the commission of intentional torts, and that the language of the policy does not provide coverage for intentional conduct. The matter is before us on Beaty's appeal from that determination.

■■■ I. This action was filed and tried in equity. Review is therefore de novo. Iowa R.App.P. 4; *Weigel v. Weigel,* 467 N.W.2d 277, 279 (Iowa 1991). Although a reviewing court is not bound by a trial court's fact findings in equity actions, it gives them weight, especially when considering the credibility of witnesses. Iowa R.App.P. 14(f)(7).

"In the construction of insurance policies, the cardinal principle is that the intent of the parties must control; and except in cases of ambiguity this is determined by what the policy itself says." *A.Y. McDonald Indus. v. INA,* 475 N.W.2d 607, 618 (Iowa 1991). Where insurance policies "are ambiguous, require interpretation, or are susceptible to two equally proper constructions, the court will adopt the construction most favorable to the insured." *Benzer v. Iowa Mut. Tornado Ins. Ass'n,* 216 N.W.2d 385, 388 (Iowa 1974).

■■ II. Although the trial court ruled on other issues, the controlling one is whether the policy provides coverage. The policy's coverage provision provides in part as follows:

> COVERAGE. The Corporation does hereby agree to pay on behalf of the Named Insured such loss ... sustained by the Insured by reason of liability imposed by law for damages caused by any *negligent act, error or omission* of the Insured ... arising out of the conduct of the business of the Insured in *rendering services* for others as a Life Underwriter, a licensed Life, Accident and Health Insurance Agent, a licensed Life, Accident and Health Insurance General Agent or a licensed Life, Accident and Health Insurance Broker.... (Emphasis added.)

There is no claim in the underlying suit that Beaty did any negligent act. We agree with the trial court that the word

"negligent" modifies only the word "act" and does not modify the word "error" or the word "omission." Thus any claim of coverage must be derived from the independent words "error" or "omission." So the question becomes whether the acts complained of amount to either an error or omission. We are convinced they do not.

"In searching for the ordinary meaning of undefined terms in a policy, we commonly refer to dictionaries." *A.Y. McDonald*, 475 N.W.2d at 619. The word "error" means "an act or condition of often ignorant or improvident deviation from a code of behavior." Webster's Third New International Unabridged Dictionary (1964). The word "error" is synonymous with "mistake, blunder, slip, [or] lapse." *Id.* The word "omission" means "apathy toward or neglect of duty, ... neglected or left undone." *Id.*

According to their dictionary and ordinary meanings, neither the words "error" nor "omission" can correctly be used to describe the conduct alleged in the underlying suit. In short, the suit alleges deliberate, not negligent, acts, and the acts alleged cannot be contemplated within the meaning of error or omission. The trial court was correct in so holding.

**AFFIRMED.**