Bernard J. VAUGHAN, Appellee,

v.

MUST, INC., Appellant.

No. 94–1414.

Supreme Court of Iowa.

Jan. 17, 1996.

Lawrence L. Marcucci of Shearer, Templer, Pingel & Kaplan, P.C., West Des Moines, and Thomas J. Jackowski of Watson & Peterson, P.C., Des Moines, for appellant.

Roger J. Kuhle and John Haroldson of Roger J. Kuhle, P.C., West Des Moines, for appellee.

Considered by McGIVERIN, C.J., and CARTER, NEUMAN, SNELL, and TERNUS, JJ.

SNELL, Justice.

Appellant, Must, Inc. appeals the trial court's judgment for the plaintiff, Bernard Vaughan, in a discrimination suit under the Age Discrimination in Employment Act. We affirm.

## I. Factual and Procedural Background

The defendant, Must, Inc., owns and operates a Burger King restaurant located at Ingersoll Avenue in Des Moines, Iowa. Wayne Stevenson and George Mucha, Must, Inc.'s two shareholders, also own M.K.S., Inc., which owns and operates a Burger King restaurant located at 86th Street in Clive, Iowa.

The plaintiff, Bernard J. Vaughan, was originally hired by M.K.S., Inc. to work as an assistant manager for the Clive store beginning in 1983. In 1984, Vaughan was promoted to manager at the Clive store due to the current manager's transfer to the Ingersoll store. In August of 1988, Vaughan's employment was terminated. He was forty-five years old at the time. At trial, conflicting evidence was presented as to whether Vaughan's employment was terminated for poor work performance and the poor condition of the store, or whether the termination was based on age-related animus of the defendant. Although he was forty-five at the time of this termination, Vaughan made no claim the action was discriminatory.

In 1989, following Vaughan's discharge from the Clive store, he was hired by Marty Blount, another area Burger King franchisee, to manage one of his restaurants. Four months later, Vaughan's employment was terminated for poor performance. Vaughan has made no claim this termination was dis-

criminatory, although he does dispute the allegation his employment was terminated for poor performance.

The very next day following Vaughan's discharge from Blount's store, Vaughan was rehired by Must, Inc. to manage the Ingersoll store. At this time Vaughan was forty-eight years old. At the time of his hiring, the Ingersoll store was in poor condition and was losing money. Among other problems, the store's "B.D.I." scores (Brand Delivery Index—a method of scoring and ranking Burger King franchises using numerous criteria such as service, quality of food, cleanliness, and customer complaints) were unacceptably low.

After eighteen months managing the Ingersoll store, Vaughan's employment was again terminated. At this time, he was forty-nine years of age. The parties presented conflicting evidence of whether Vaughan was to concentrate on the B.D.I. scores. Vaughan claims he was told to concentrate exclusively on the store's bottom line profits and not to pay attention to the B.D.I. scores. Both parties presented conflicting accounting evidence with regard to the store's profitability at the time of Vaughan's discharge. The plaintiff asserted a profit of $15,000, a turn around of approximately $34,000 from the previous year's losses; and the defendant asserted a bottom line loss of approximately $15,000. The B.D.I. scores for the Ingersoll store at the time of Vaughan's discharge were unacceptably low, ranking the store 108 out of 110 stores in the region. Vaughan did, however, present evidence establishing the store's B.D.I. scores had actually begun to steadily improve during his last three months of employment.

Vaughan also presented evidence the employer was trying to establish a more youthful work force. Gabe Kavolick, the Operations Manager overseeing the day-to-day operations of the franchises, testified that age was definitely an important reason for the termination. Kavolick also explained that when he was hired, Stevenson told him he would be responsible to fire people who were "too old" and to try and hire younger people. Phil Dawes, another store manager, testified he was told by both Kavolick and Stevenson to terminate the employment of employees "because they were too old." He also testified Stevenson had asked him to fire a woman who was in her 50s because she was "too old to take care of business the right way" and to hire younger people "because we just nee[d] younger people that could [work] faster." Dawes himself was later transferred to another store because the management preferred to have a younger, single person at his present location.

Following his termination of employment, Vaughan filed an administrative action with the Equal Employment Opportunity Commission (hereinafter EEOC) and the Iowa Civil Rights Commission. Shortly thereafter, he filed this action, alleging age discrimination. The matter came to trial before the district court for Polk County solely based on Vaughan's claim of discrimination under the Federal Age Discrimination in Employment Act (hereinafter ADEA), 29 U.S.C. sections 621 through 634 (1988). The Iowa courts have concurrent jurisdiction for cases brought under this act as conferred by 29 U.S.C. section 626(c)(1). On May 9, 1994, the jury returned a verdict in favor of the plaintiff in the amount of $15,000 for back pay and made a finding that the defendant's actions were willful. On May 13, 1994, the plaintiff filed a motion for post-verdict award, requesting front pay damages, attorney fees, court costs, and a $2232 job service additur. On May 19, 1994, the defendant filed a motion for judgment notwithstanding the verdict and a motion for new trial. On July 29, 1994, the court entered an order denying the defendant's motions for judgment notwithstanding the verdict and new trial and entered judgment awarding the plaintiff $17,232 in back pay; $17,232 in liquidated damages; $5750 in front pay; $21,261 in attorney fees; and court costs. The court made a $2232 upward adjustment to the back pay award as it found the defendant was not entitled to a reduction for unemployment benefits the plaintiff had received.

Defendant, Must, Inc., appeals from the trial court's failure to grant its motion for judgment notwithstanding the verdict, the formulation of jury instructions, the calcula-

tion of damages, the court's failure to admit the conclusions of a prior EEOC determination, and the court's failure to grant a new trial based on plaintiff's attorney's misconduct during trial. We affirm.

II. Defendant's Motion for Directed Verdict and Judgment Notwithstanding the Verdict

■ We review the grant or denial of a motion for judgment notwithstanding the verdict for the correction of errors of law. Iowa R.App.P. 4. Findings of fact made by the trial court are binding on this appeal as long as they are supported by substantial evidence. Iowa R.App.P. 14(f)(1). A factual finding is supported by substantial evidence if the finding may be reasonably inferred from the evidence presented. *Briggs Transp. Co. v. Starr Sales Co.*, 262 N.W.2d 805, 808 (Iowa 1978).

■ When ruling on a motion for directed verdict, a trial court must examine the evidence in the light most favorable to the non-moving party. Iowa R.App.P. 14(f)(2); *Beitz v. Horak*, 271 N.W.2d 755, 757 (Iowa 1978); *Cockerton v. Mercy Hosp. Medical Ctr.*, 490 N.W.2d 856, 858 (Iowa Ct.App. 1992). To overrule the motion, the court must find substantial evidence in support of each element of the non-moving party's claim. *Beitz*, 271 N.W.2d at 757. A motion for judgment notwithstanding the verdict must stand or fall based on the grounds set out in the motion for directed verdict. *Konicek v. Loomis Bros., Inc.*, 457 N.W.2d 614, 617 (Iowa 1990).

■ In order to warrant submission of his ADEA claim to the jury, a plaintiff must first establish he was a victim of age discrimination. Generally, a plaintiff alleging age discrimination in employment may establish his claim by one of two methods: the *McDonnell Douglas* method or the *Price Waterhouse* method. *See McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). The *Price Waterhouse* method is used when direct or circumstantial evidence is presented which tends to establish age was a determining factor in the employment deci-

sion. *Price Waterhouse*, 490 U.S. at 258, 109 S.Ct. at 1795, 104 L.Ed.2d at 293. The *McDonnell Douglas* method is an indirect burden shifting framework. *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. at 1824–25, 36 L.Ed.2d at 677–78.

■ In a *McDonnell Douglas* type of case, the evidentiary burdens are allocated as follows: the plaintiff must first establish a prima facie case of discrimination—that he was a member of a protected class, performing his work satisfactorily, and had adverse action taken against him. *See Lindsey v. Prive Corp.*, 987 F.2d 324, 326–27 (5th Cir.1993). The defendant must then articulate a legitimate nondiscriminatory reason for the action. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 216 (1981). Although the defendant need not establish this by a preponderance of the evidence, he must clearly set forth some legitimate nondiscriminatory basis for his action. *Burdine*, 450 U.S. at 255–56, 101 S.Ct. at 1094–95, 67 L.Ed.2d at 216–17; *see also St. Mary's Honor Center v. Hicks*, 509 U.S. 502, ——, 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407, 416–17 (1993). If the defendant satisfies his burden of asserting a legitimate explanation, the burden then shifts to the plaintiff to prove the asserted reason is merely pretext and that the discriminatory motive played a substantial part in the actions taken. *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. at 1824–25, 36 L.Ed.2d at 677–78; *see also Geller v. Markham*, 635 F.2d 1027, 1035 (2d Cir.1980), *cert. denied*, 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981).

■ Under the *Price Waterhouse* method the plaintiff must present credible evidence of conduct or statements of supervisors which may be seen as discrimination sufficient to support an inference that the discriminatory attitude was a motivating factor. *Price Waterhouse*, 490 U.S. at 242, 109 S.Ct. at 1786, 104 L.Ed.2d at 282; *see also Radabaugh v. Zip Feed Mills*, 997 F.2d 444, 448 (8th Cir.1993). After the direct evidence has been presented, the employer then bears the burden of establishing by a preponderance of the evidence it would have made the same

decision even in absence of the improper motive. *Price Waterhouse*, 490 U.S. at 244–45, 109 S.Ct. at 1787–88, 104 L.Ed.2d at 284–85. This burden is a burden of proof by a preponderance of the evidence, and is not satisfied merely by articulating a reason for the discharge. *Id.* at 253, 109 S.Ct. at 1775, 104 L.Ed.2d at 289.

■ Upon examining evidence presented by both parties during the course of trial, it is clear Vaughan presented substantial evidence of age discrimination (under either the *McDonnell Douglas* or *Price Waterhouse* frameworks) to merit submission of his case to the jury. In examining a ruling on such a motion, we are to view the evidence presented in a light most favorable to the non-moving party, in this case, the plaintiff, Vaughan. *See Konicek*, 457 N.W.2d at 617. Although arguably, the defendant presented evidence Vaughan was fired for reasons relating to poor performance, clearly the jury put more weight on evidence presented by Vaughan that he was fired for discriminatory reasons.

■ The defendant cites two cases, *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir.1991), and *Lowe v. J.B. Hunt Transport, Inc.*, 963 F.2d 173, 174 (8th Cir.1992), for the proposition that a directed verdict would have been proper in this case. In both these cases, the plaintiffs were hired while members of the protected age group and fired shortly thereafter, Proud six months later, and Lowe less than two years later. *Proud*, 945 F.2d at 797–99; *Lowe*, 963 F.2d at 174–75. In both cases, the plaintiffs were hired and fired by the same individual. *Proud*, 945 F.2d at 797; *Lowe*, 963 F.2d at 174. The defendant seems to be making the argument that whenever a member of a protected class is hired and then fired shortly thereafter by the same officials, the action may not be discrimination as a matter of law. To apply such a wooden rule in an area where each case is factually distinct would effectively grant every employer a grace period at the beginning of each employee's tenure during which the employer could freely discriminate with no fear of sanctions. This we choose not to do. Questions of fact and credibility of witnesses such as these are more properly answered by the jury, and as long as they are supported by substantial evidence, we will not set them aside. Therefore, the trial court's denial of the defendant's motion for directed verdict and judgment notwithstanding the verdict are affirmed.

III. Jury Instructions

■ Our review of jury instructions in an action at law is for correction of errors of law. *Uffelman v. Fire Pension Bd.*, 424 N.W.2d 467, 467 (Iowa 1988). As long as a requested instruction correctly states the law, has application to the case, and is not stated elsewhere in the instructions, the court must give the requested instruction. *Adam v. T.I.P. Rural Elec. Corp.*, 271 N.W.2d 896, 901 (Iowa 1978); *Turner v. Jones*, 215 N.W.2d 289, 291–92 (Iowa 1974). Error in giving or refusing jury instructions does not merit reversal unless it results in prejudice. *Rudolph v. Iowa Methodist Medical Ctr.*, 293 N.W.2d 550, 555 (Iowa 1980).

■ On submission of the proposed jury instructions, the defendant submitted instructions in the form of a *Price Waterhouse* type and a *McDonnell Douglas* type of instruction. The court declined to give the *McDonnell Douglas* form of instruction and instructed the jury only under the *Price Waterhouse* framework. The defendant contends this was error and the jury should have been instructed solely under *McDonnell Douglas* or at the very least been given both types of instructions. This argument fails for two reasons. Initially the defendant argues there was a lack of substantial direct evidence presented as to the defendant's age discrimination. As we have noted earlier, we find the plaintiff presented substantial evidence on this issue to merit presentation to the jury; certainly this quantum of evidence would suffice to support an instruction on the issue. Additionally, when direct evidence of discrimination has been presented, the *McDonnell Douglas* framework may not be applied. *Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 893 (Iowa 1990). This court has explained previously

Where direct evidence is presented and the employer suggests other factors influ-

540

enced the decision the employer has the burden of proving by a preponderance of the evidence that it would have made the same decision if it had not considered the improper factor.

*Id.* at 894.

■■■ Because the trial court's instructions were a correct statement of the law and they were supported by substantial evidence in the record, the action of the trial court is affirmed.

IV. Damages

■■■■ Following the plaintiff's motion for post verdict awards, the trial court awarded damages in the form of front pay, liquidated damages, and attorneys fees. These awards are equitable remedies committed to the court's discretion under 29 U.S.C. section 216, the Fair Labor Standards Act. *See MacDissi v. Valmont Indus.*, 856 F.2d 1054, 1060 (8th Cir.1988). Provisions of the Fair Labor Standards Act are incorporated into the ADEA by reference. The standard of review for equitable questions is de novo. *Employers Reins. Corp. v. Mutual Medical Plans, Inc.*, 504 N.W.2d 885, 887 (Iowa 1993). Upon review, substantial weight should be given to the trial court's findings of fact, although they are not binding. *Id.*

■■■■ Under the ADEA, front pay is a permissible equitable remedy within the sound discretion of the trial court. 29 U.S.C. § 633a(c); *see also Sellers v. Delgado College*, 781 F.2d 503, 505 (5th Cir.1986); *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 726 (2d Cir.1984). It is not an exclusive remedy, rather, it is but one of a broad range of remedial actions a court may take. *Whittlesey*, 742 F.2d at 728–29; *see also Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1101 (8th Cir.1982) (a court may award both front pay and liquidated damages under the ADEA); *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1205 (7th Cir.1989) (an award of liquidated damages does not preclude an award of front pay).

■■■ The question presented in assessing the propriety of an award of front pay is to determine whether the back pay

awarded compensates the plaintiff so as to restore him to the same position in which he would be had the discriminatory act not taken place. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418–19, 95 S.Ct. 2362, 2372–73, 45 L.Ed.2d 280, 297–98 (1975). Several factors should be examined in making the determination whether to award front pay. They include the following: whether liquidated damages were awarded, whether the plaintiff has reasonable prospects of obtaining comparable employment, and the period of time for which front pay is to be awarded. *McNeil v. Economics Lab., Inc.*, 800 F.2d 111, 118 (7th Cir.1986).

■■■ The defendant makes the argument no front pay should be awarded because due to the high turnover rate in the fast food industry Vaughan would likely not have remained with Must, Inc. through the present time. We refuse to adopt this argument, however, because to do so would be to grant a per se license to the fast food industry to discriminate without the possible sanction of front pay based merely on its high turnover rate. In this case, the trial court was clearly acting within the realm of its discretionary powers in awarding front pay. Clear evidence was presented of the plaintiff's past, present, and future earning capacities, as well as the prospects of his career with his current employer, McDonald's. Therefore, the trial court's award of front pay is affirmed.

■■■ On May 9, 1994 the jury returned a verdict indicating the defendant acted willfully in violating the ADEA. The trial court therefore ordered an award of $17,232 in liquidated damages. Liquidated damages are allowed under 29 U.S.C. section 626(b) in cases of willful violation. *See Mistretta v. Sandia Corp.*, 639 F.2d 588, 595 (10th Cir. 1980). The defendant does not dispute the appropriateness of liquidated damages in cases of willful violation of the Act; rather, the defendant challenges the jury's determination of willfulness. Again, in light of our view the jury is a more appropriate judge of questions of fact, we will not disturb its findings unless they lack substantial support in the record. The defendant's argument

here is really no different than the arguments brought forth in division II of this opinion dealing with sufficiency of the evidence to support the jury verdict. Because we have already addressed this and found substantial evidence present, the trial court's award of liquidated damages must stand.

▮▮▮▮ The defendant next challenges the trial court's grant of attorneys fees in the amount of $21,261, seventy-five percent of the $28,348 amount the plaintiff originally requested. Such a challenge is reviewed under an abuse of discretion standard. *Wright v. Stone Container Corp.,* 524 F.2d 1058, 1061 (8th Cir.1975); *Green v. Iowa Dist. Ct.,* 415 N.W.2d 606, 608 (Iowa 1987). In cases such as this, the plaintiff has the burden of proving both that the legal services performed were reasonably necessary and the charges themselves were reasonable. *Green,* 415 N.W.2d at 608. In determining the appropriate fee award, this court looks at

> the time necessarily spent, the nature and extent of the service, the amount involved, the difficulty of handling and importance of the issues, the responsibilities assumed and results obtained, the standing and experience of the attorney in the profession, and the customary charges for similar services.

*Landals v. Rolfes Co.,* 454 N.W.2d at 897.

▮▮▮ The defendant emphasizes the plaintiff, although a prevailing party, was only partially successful (due to the early dismissal of some additional state civil rights causes of action) and therefore his attorneys fees should be reduced accordingly. The United States Supreme Court addressed this type of situation in *Hensley v. Eckerhart,* 461 U.S. 424, 440, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The Court stated

> Where the plaintiff has failed to prevail on a claim that is "distinct" in all respects from his successful claims it should be excluded in considering the amount of a reasonable fee.... Where the plaintiff achieved only limited success, the district court should award the amount of fees that is in reasonable relation to the results obtained.

*Id.* at 440, 103 S.Ct. at 1943, 76 L.Ed.2d at 54–55. Because this judgment is equitable, the district court has substantial discretion. *Id.* at 436–37, 103 S.Ct. at 1940–41, 76 L.Ed.2d at 52–53.

▮▮▮ In this case, the plaintiff originally brought claims of age discrimination under both the Iowa and federal statutes. He only prevailed on claims brought under the ADEA. Defendant takes great issue with the fact the plaintiff actually received only approximately twenty percent of his original demand for damages. Defendant argues the court should therefore reduce plaintiff's fees to twenty percent of those requested rather than the seventy-five percent granted by the trial court. We decline to accept this argument. To adopt such a rigid formula, especially in cases such as this where the state and federal claims are based on exactly the same occurrences, it may be difficult to sort out precisely hour by hour what legal work was performed to support what allegation. The fact that this was not done here simply lends weight to the argument. Furthermore, to tie the recovery of fees to a precise ratio of the amount of damages awarded over the amount demanded may steer plaintiffs from making demand for the full amount of damages sustained out of fear of a reduction in the available attorneys fees award. As the Court in *Hensley* stated

> There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.

*Id.* at 436–37, 103 S.Ct. at 1941, 76 L.Ed.2d at 52. *See also Lynch v. City of Des Moines,* 464 N.W.2d 236, 238–40 (Iowa 1990) (upholding an award of $90,000 attorneys fees for a $10,000 recovery in a sexual harassment case). In this case, the district court chose not to sift through all the legal work done and separate it based on whether each particular hour was related to the state or federal claim; rather, it examined the case as a whole and the success (and failures) of the plaintiff and determined an adequate award

of attorneys fees was $21,261 or seventy-five percent of the amount requested. This determination was clearly within the court's discretion and will not be set aside.

### V. Exclusion of the Equal Employment Opportunity Commission Report

■ The defendant argues the district court committed error in refusing to admit an EEOC determination that it had found insufficient evidence of age discrimination to establish a violation. Appellate review of exclusion of evidence is for correction of errors of law. Iowa R.App.P. 4. The decision whether to admit evidence is within the sound discretion of the trial court, and such decisions will not be disturbed on appeal unless the discretion has been abused and a substantial right of a party has been affected. *Stumpf v. Reiss,* 502 N.W.2d 620, 623 (Iowa 1993); *Schuller v. Hy–Vee Food Stores,* 328 N.W.2d 328, 331 (Iowa 1982); *Twyford v. Weber,* 220 N.W.2d 919, 924 (Iowa 1974).

The Eighth Circuit has addressed admission of these documents and found them to be of little evidentiary value:

> there is little probative value in the Equal Employment Opportunity Commission's conclusory statements regarding the same evidence [presented to the jury]. To admit the report under these circumstances would amount to admitting the opinion of an expert witness as to what conclusions the jury should draw, even though the jury had the opportunity and ability to draw its own conclusions.

*Johnson v. Yellow Freight Sys.,* 734 F.2d 1304, 1308–10 (8th Cir.1984).

■ The defendant in this case, however, claims the plaintiff opened the door to admission of the report by using an affidavit of Wayne Stevenson for impeachment purposes. This is clearly not the case; the affidavit itself contained no legal conclusion or statement regarding the disposition of the case. Defendant's counsel himself admitted that fact. At no time during the trial did the plaintiff raise the issue of the disposition of the EEOC complaint. Because the prejudicial effect of the report would greatly outweigh any probative value it may have, the court was well within its discretion in order-ing its exclusion. Iowa R.Evid. 403; *see also Barfield v. Orange County,* 911 F.2d 644, 649–50 (11th Cir.1990) (trial court's decision whether to admit EEOC report should be guided by consideration of whether the report consists of legal conclusions in addition to facts and whether it would result in undue prejudice). Because no abuse of discretion has been shown, the trial court's exclusion of the EEOC report is affirmed.

### VI. Denial of Motion for New Trial

■ Defendant moved for a new trial on the basis of allegations of misconduct of plaintiff's attorney resulting in unfair prejudice to the defendant. The standard of review of a denial of a motion for new trial depends on the grounds for new trial asserted in the motion and ruled upon by the court. *Ladeburg v. Ray,* 508 N.W.2d 694, 696 (Iowa 1993). If the motion and ruling are based on a discretionary ground, the trial court's decision is reviewed on appeal for an abuse of discretion. *Id.* In ruling on motions for new trial, the court has broad but not unlimited discretion to determine if the verdict effectuates substantial justice among the parties. Iowa R.App.P. 14(f)(3).

■ Defendant argues the actions of plaintiff's counsel at trial were so prejudicial as to prevent him from obtaining a fair trial. He bases this argument on two statements made by plaintiff's counsel. Prior to trial the court had made a determination that neither party would be allowed to offer evidence of discrimination on the basis of any characteristic other than age. When questioning his first witness, plaintiff's counsel began by saying, "now you know there are certain things we cannot talk about." Counsel was later admonished for that comment in chambers. Later, plaintiff's counsel stated in the jury's presence that he wished to take up something outside the presence of the jury. The court later admonished him not to make such comments, but rather to request a bench conference. Finally, defendant points out that plaintiff's counsel asked Wayne Stevenson whether he ever told managers "there were groups of people" he did not want to be hired. Defendant argues the "groups of people" language could create doubt in the jury's

minds that the defendant was engaged in discriminatory practices with regard to more than just age classifications. A trial court has considerable discretion in determining whether alleged misconduct was in fact prejudicial. *Mays v. C. Mac Chambers Co.,* 490 N.W.2d 800, 803 (Iowa 1992); *Baysinger v. Haney,* 261 Iowa 577, 583, 155 N.W.2d 496, 499 (Iowa 1968). An abuse of this discretion is shown only where "such discretion was exercised by the court on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Morrison,* 323 N.W.2d 254, 256 (Iowa 1982). In this case, although there was a plethora of testimony and evidence presented, the defendant was able to present only three instances of alleged misconduct by plaintiff's counsel. Certainly it was within the trial court's discretion to determine these incidents did not prejudice the defendant such as to merit a grant of a motion for new trial. Therefore, we affirm the court's denial of the motion.

**AFFIRMED.**