# IN THE COURT OF APPEALS OF IOWA

No. 16-1945
Filed July 18, 2018

**DON WYNGARDEN,**
　　　　Plaintiff-Appellant,

**vs.**

**STATE OF IOWA JUDICIAL BRANCH, JOHN WAUTERS,
and BRUCE BUTTEL,**
　　　　Defendants-Appellees.

_____

　　　　Appeal from the Iowa District Court for Wapello County, Sherman W.

Phipps, Judge.


　　　　Plaintiff appeals the district court's grant of a directed verdict for defendants

in his age discrimination action. **REVERSED AND REMANDED.**



　　　　Steven Gardner of Denefe, Gardner & Zingg, P.C., Ottumwa, for appellant.

　　　　Thomas J. Miller, Attorney General, and Jeffrey C. Peterzalek and Julie J.

Bussanmas, until her withdrawal, Assistant Attorneys General, for appellees.



　　　　Heard by Vogel, P.J., and Doyle and Bower, JJ.

**BOWER, Judge.**

Don Wyngarden appeals the district court's grant of a directed verdict for defendants in his age discrimination action. We conclude our finding in the previous appeal, *Wyngarden v. Iowa Judicial Branch*, No. 13-0863, 2014 WL 4230192, at *10 (Iowa Ct. App. Aug. 27, 2014), there were genuine fact issues for trial on the question of age discrimination, making summary judgment not appropriate, is not dispositive in this appeal. After considering the evidence presented by Wyngarden, we conclude the district court erred in granting a directed verdict to the State. In making this finding, we note it is generally the best course of action to wait until the completion of all evidence to grant a motion for directed verdict, except in the most obvious cases. We also address several evidentiary issues we believe may arise again on retrial. We reverse the district court's grant of the motion for directed verdict and remand for further proceedings.

## I.     Background Facts & Proceedings

Wyngarden, who was born in 1951, was employed as a juvenile court officer (JCO) by the Iowa Judicial Branch.[1] His immediate supervisor was Bruce Buttel and Buttel's supervisor was John Wauters. Wyngarden received an oral reprimand in November 2007, which was not placed in his file. On October 9, 2008, Wyngarden received a written reprimand based on Wauters's determination Wyngarden acted with insubordination when he refused to make corrections requested by Buttel to a document. Wyngarden utilized the grievance procedure

---

[1] Wyngarden retired on January 31, 2014.

available to employees of the Iowa Judicial Branch, but his appeal of the written reprimand was ultimately denied on May 5, 2009.

On January 13, 2010, Wauters suspended Wyngarden without pay for three days based on violations of work rules pertaining to the juvenile case of S.I. Wauters claimed Wyngarden (1) improperly placed S.I., who was on informal probation, in a day treatment program when the program was only available to those on formal probation; (2) did not timely draft an informal adjustment agreement; and (3) had the parties sign an informal adjustment agreement at a later date and put an earlier date on it with the word "re-signed." Wyngarden again filed a grievance under the Judicial Branch's personnel policies. During the grievance proceedings, Wauters stated S.I.'s family asked for a different JCO than Wyngarden, so the case was reassigned to Doug Reese, a JCO who worked in the same office as Wyngarden. Wyngarden's appeal of the suspension was denied on April 30.

On July 26, Wyngarden filed a complaint with the Iowa Civil Rights Commission, claiming he had been subjected to age discrimination. He received an Administrative Release from the Iowa Civil Rights Commission and filed a petition against the Iowa Judicial Branch, Wauters, and Buttel,[2] raising claims of age discrimination, retaliation, and loss of benefits.

The defendants filed a motion for summary judgment, which Wyngarden resisted. The district court found Wyndarden's age discrimination claim was limited to the allegations related to the three-day suspension due to the time

---

[2] We will refer to the three defendants together as the State.

limitation in Iowa Code section 216.15(13) (2009). The court determined Wyngarden failed to set forth a prima facie case of age discrimination and granted the motion for summary judgment.

Wyngarden appealed the district court's decision. We found the evidence of the written reprimand was not barred by the statute of limitations due to the continuing violation doctrine. *Wyngarden*, 2014 WL 4230192, at *10. We also found there were genuine issues of material fact as to whether the adverse employment actions against Wyngarden were pretextual, and concluded summary judgment was not appropriate. *Id.* at *12–13. We reversed the district court's decision and remanded for further proceedings. *Id.* at *13.

On remand, the defendants filed a new motion for summary judgment, noting subsequent to our decision the Iowa Supreme Court filed *Dindinger v. Allsteel, Inc.*, 860 N.W.2d 557, 571 (Iowa 2015), which found "the continuing violation doctrine does not apply to cases involving discrete discriminatory acts, as opposed to hostile work environment claims." The district court denied the motion for summary judgment but found the only remaining claim in the action related to discrete acts of discrimination. The court rejected Wyngarden's assertion the issues of a hostile work environment and retaliation were still pending.

Wyngarden filed his list of witnesses on October 25, 2016, which included several other JCOs, and his list of exhibits. The defendants filed a motion to strike certain witnesses and exhibits, claiming they had not been previously disclosed through discovery. The court ruled seven of Wyngarden's proposed witnesses would be excluded. The court also excluded any exhibits not previously provided to defendants.

In addition, defendants filed a motion in limine. The court ruled "evidence concerning a discrimination basis of anything other than age is excluded; and the plaintiff may only seek damages related to the three-day suspension of the plaintiff." The court found, "The three-day suspension of the plaintiff is the only issue surviving the exhaustion of administrative remedies and the pleading process." The court determined in order to present testimony by other employees of the Judicial Branch in an effort to show Wyngarden was treated differently, he needed to first make an offer of proof to show the employees were "similarly situated."

A jury trial commenced on November 1. Wyngarden testified Buttel asked Wyngarden and two of his sons, "When is your old man going to retire?" at a retirement party for another employee in July 2007. Wyngarden also testified at a meeting on August 8, 2008, Wauters stated Wyngarden "had the years of service that would allow [him] to retire." Wyngarden testified Wauters told him other older JCOs were retiring and "perhaps [he] should retire as well." He also testified he met with Wauters and Buttel on September 16, 2009, and felt "they're there again on another investigation and inquiry and in every way saying to me, 'We'd like you to leave,' without using those very words." Additionally, Wyngarden stated, "I had been told I am not happy. I had been told, you can retire." He testified he believed he was treated differently than younger employees.

Wyngarden testified he was at his vacation cap for many years and continued to accrue vacation hours, so if he did not take vacation he would lose any hours above his vacation cap. He stated he raised this issue with Wauters but was told if he took more vacation time it would affect other employees, who

Wyngarden noted were younger. There was conflicting evidence whether Wyngarden actually lost any vacation time.

Wyngarden testified to reasons he believed the three-day suspension was pretextual. He stated Wauters approved day treatment for S.I. on two occasions before he was given the three-day suspension for putting her in a day treatment program. Wyngarden also testified he believed Wauters approved placing children in day treatment programs for other JCOs in the judicial district. He testified he believed there was a signed informal probation agreement for S.I. from May 12, 2009, but when he looked for it in September 2009 it was missing. He stated he, S.I., and her stepmother, Stephanie, recreated the original agreement, dating it May 12 and September 4, with the notation "re-signed."

Stephanie testified she thought there was a signed agreement from May 2009 but was not 100% certain of this. She stated, "I was pretty sure we had already signed it and it was just misplaced." She agreed with Wyngarden's testimony concerning the recreated document from September 4, 2009. She stated she never asked for Wyngarden to be removed as S.I.'s JCO and was upset when it happened. Stephanie testified Wauters and Buttel met with S.I. at school without her permission. She stated she felt they were being sneaky and using S.I.'s case for their own personal agenda. Stephanie testified she felt Wyngarden did a good job with S.I. She stated she was "very satisfied" with the services S.I. received from Wyngarden.

Reese testified Wyngarden "did a great job." Reese testified Wyngarden "did an excellent job with kids, cared greatly about the kids, the welfare of the kids, and their parents." He testified Wauters sent him an email stating Stephanie had

requested him as the JCO for S.I. instead of Wyngarden. Reese stated at the time Wyngarden was working on the S.I. file, some documents in other files were not where they were supposed to be. He stated he believed Wyngarden received a greater degree of supervision than he did.[3]

At the close of Wyngarden's evidence, the State made an oral motion for a directed verdict. The district court ruled, "[T]he plaintiff has failed to introduce substantial evidence to support the elements of the claims, specifically the element alleging that age was the motivating factor, or the reason for his suspension." The court also issued a written ruling, stating it granted the motion for directed verdict, "for the reasons stated on the record." Wyngarden now appeals the district court's decision.

## II. Law of the Case Doctrine

Wyngarden claims the district court should not have granted the State's motion for directed verdict. He notes we previously held, "On the record as a whole, there are genuine fact issues for trial on the ultimate question of age discrimination." *Wyngarden*, 2014 WL 4230192, at *13. Wyngarden claims the grant of directed verdict was contrary to the law of the case doctrine because we had already determined the State was not entitled to judgment as a matter of law due to outstanding factual issues.

In the law of the case doctrine, we do not reconsider an issue previously decided in an appellate decision. *State v. Ragland*, 812 N.W.2d 654, 658 (Iowa

---

[3] In an offer of proof, Reese testified, "I believe that they were trying to get [Wyngarden] to retire." He also stated he believed age played a factor in the treatment Wyngarden received from his supervisors.

2012); *State v. Grosvenor,* 402 N.W.2d 402, 405 (Iowa 1987). The doctrine stems from "a public policy against reopening matters which have already been decided." *Bahl v. City of Asbury,* 725 N.W.2d 317, 321 (Iowa 2006). "It is a rule which provides that the legal principles announced and the views expressed by a reviewing court in an opinion, right or wrong, are binding throughout further progress of the case upon the litigants, the trial court and this court in later appeals." *Grosvenor,* 402 N.W.2d at 405. "Thus, issues decided by an appellate court generally cannot be reheard, reconsidered, or relitigated in the trial court." *United Fire & Cas. Co. v. Iowa Dist. Ct.*, 612 N.W.2d 101, 103 (Iowa 2000).

There are exceptions to the law of the case doctrine, for example, when (1) the law has been changed by legislative enactment; (2) the law has been clarified by judicial decisions following remand; or (3) different facts are presented on retrial. *Id.* at 103–04. As noted above, after our decision, the Iowa Supreme Court filed *Dindinger*, 860 N.W.2d at 571–72, which clarified the law concerning the continuing violation doctrine in discrimination cases. Based on *Dindinger*, our findings concerning the continuing violation doctrine were no longer the law of the case at trial. *See Wyngarden*, 2014 WL 4230192, at *10.

Furthermore, the evidence presented during a trial may very well be different than the evidence presented through "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," in a motion for summary judgment. *See* Iowa R. Civ. P. 1.981(3). We conclude our prior finding there were genuine fact issues for trial on the question of age discrimination would not automatically preclude a directed verdict. The court's ruling on the motion for directed verdict must be based on the evidence presented

during a party's case. *See Johnson v. Interstate Power Co.*, 481 N.W.2d 310, 317 (Iowa 1992) (stating in consideration of a motion for directed verdict, "the district court must first decide whether the moving party has presented substantial evidence on each element of the claim").

### III.     Motion for Directed Verdict

We turn to the issue of whether the district court erred by granting a directed verdict, looking at the evidence presented by Wyngarden in this case. "We review a trial court's grant of a motion for directed verdict for correction of errors of law." *Lawrence v. Grinde*, 534 N.W.2d 414, 418 (Iowa 1995). "[W]e take into consideration all reasonable inferences that could be fairly made by the jury and view the evidence in the light most favorable to the nonmoving party." *Felderman v. City of Maquoketa*, 731 N.W.2d 676, 678 (Iowa 2007).

A motion for directed verdict should be granted only "where no substantial evidence exists to support each element of a plaintiff's claim." *Godar v. Edwards*, 588 N.W.2d 701, 705 (Iowa 1999). "Evidence is substantial if reasonable minds could accept it as adequate to reach the same findings." *Dettmann v. Kruckenberg*, 613 N.W.2d 238, 251 (Iowa 2000). "Where reasonable minds could differ on an issue, directed verdict is improper and the case must go to the jury." *DeBoom v. Raining Rose, Inc.*, 772 N.W.2d 1, 5 (Iowa 2009).

Our supreme court has stated:

> In *Christensen,* we approved the procedure of not granting motions for directed verdict until the completion of all evidence except in the most obvious cases. We continue to believe this to be the best course of action. Even the weakest cases may gain strength during the defendant's presentation of the case.

*Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 845 (Iowa 2010) (citing *Christensen v. Sheldon*, 63 N.W.2d 892, 900-01 (Iowa 1954)).

The Iowa Supreme Court has adopted the "Uhlenhopp rule," "which encourages the district court to deny a motion for directed verdict, even if it is clear the movant is entitled to judgment as a matter of law."[4] *State v. Keding*, 553 N.W.2d 305, 308 (Iowa 1996). "[I]n most cases it will be prudent not to consider a motion for directed verdict until all evidence has been presented . . . ." *Royal Indem.*, 786 N.W.2d at 845; *see also Butcher v. White's Iowa Inst.*, 541 N.W.2d 262, 264 (Iowa Ct. App. 1995) (applying the Uhlenhopp rule). "District courts are encouraged to deny motions for directed verdict, even if it seems clear the movant is entitled to judgment as a matter of law." *Hill v. Damm*, 804 N.W.2d 95, 98 (Iowa Ct. App. 2011). "It is considered more prudent for the court to submit even a weak case to the jury to avoid another trial in case of error." *Id.*

"A person may prove age discrimination by either of two methods. One method is to present direct or circumstantial evidence that age was a determining factor in the employer's employment decision," using the analysis from *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). *Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 893-94 (Iowa 1990). The other method "utilize[s] the indirect, burden-shifting method of proof as established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)." *Id.*

---

[4] The rule is named for Justice Harvey Uhlenhopp, who noted it was usually the better course of conduct to deny a motion for directed verdict in order to avoid the necessity of another trial if the motion was granted in error. *See Reed v. Chrysler Corp.*, 494 N.W.2d 224, 228–29 (Iowa 1992), *overruled on other grounds by Jahn v. Hyundai Motor Co.*, 773 N.W.2d 550, 560 (Iowa 2009).

**A.** On the first method, as analyzed under *Price Waterhouse*, 490 U.S. at 258, we stated:

> Thus, under "the *Price Waterhouse* method, the plaintiff must present credible evidence of conduct or statements of supervisors which may be seen as discrimination sufficient to support an inference that the discriminatory attitude was a motivating factor." After the plaintiff's "*direct evidence* has been presented, the employer then bears the burden of establishing by a preponderance of the evidence it would have made the same decision even in the absence of the improper motive." The employer's "burden of proof is proof by a preponderance of the evidence, and is not satisfied merely by articulating a reason for the" disputed employment actions.

*Wyngarden*, 2014 WL 4230192, at *11 (quoting *Vaughan v. Must, Inc.*, 542 N.W.2d 533, 538–39 (Iowa 1996)).

On remand, the district court determined Wyngarden did not present substantial evidence on the first factor, "evidence of conduct or statements of supervisors which may be seen as discrimination sufficient to support an inference that the discriminatory attitude was a motivating factor."[5] *See Vaughan*, 542 N.W.2d at 538. The court stated:

> The plaintiff has failed to establish specifically that age was a motivating or determining factor in the employer's decision. I think that this court has been left at the close of the plaintiff's evidence with nothing more than speculation or conjecture as to what the motivating factor was in this suspension. I don't believe that's sufficient to allow this case to go to the jury.

"[I]n discrimination cases, the plaintiff need only demonstrate 'termination occurred under circumstances giving rise to an inference of discrimination' and his or her status as a member of a protected class was *a* determining factor in the

---

[5] Because the district court found Wyngarden had not presented substantial evidence on the first factor, the court did not address whether the State had established by a preponderance of the evidence it would have made the same decision even in the absence of the improper motive. *See Vaughan*, 542 N.W.2d at 538–39.

decision to terminate employment." *DeBoom*, 772 N.W.2d at 13 (citation omitted). The term "motivating factor" in discrimination cases is used to show a plaintiff is not required to show discrimination was *the* determining factor in adverse employment action. *Id.* at 13–14.

During the trial, Wyngarden presented evidence of several statements supervisors made to him which could be seen as sufficiently discriminatory to support an inference the discriminatory attitude of his supervisors was a motivating factor in the adverse employment action taken against him. *See Vaughan*, 542 N.W.2d at 538. Wyngarden testified Buttel asked Wyngarden and two of his sons, "When is your old man going to retire?" Wyngarden also testified Wauters stated Wyngarden "had the years of service that would allow [him] to retire." Wyngarden testified Wauters told him other older JCOs were retiring and "perhaps [he] should retire as well." He also testified after a meeting with Wauters and Buttel he felt "they're there again on another investigation and inquiry and in every way saying to me, 'We'd like you to leave,' without using those very words." Additionally, Wyngarden stated, "I had been told I am not happy. I had been told, you can retire." Wyngarden testified he believed he was treated differently than younger employees. Additionally, Reese, who was younger and worked in the same office, testified Wyngarden received more supervision than he did.

We conclude Wyngarden presented substantial evidence of the first factor of an age discrimination claim under *Price Waterhouse*. He presented "credible evidence of conduct or statements of supervisors which may be seen as discrimination sufficient to support an inference that the discriminatory attitude was a motivating factor." *See id.* Wyngarden was not required to show age

discrimination was *the* motiving factor, only that it was *a* motivating factor. *See DeBoom*, 772 N.W.2d at 13–14. The statements of Wyngarden's supervisors, encouraging him to retire, was sufficient to present a jury question as to whether age discrimination was a motivating factor in the adverse employment action against Wyngarden. We find the district court erred by granting the motion for directed verdict to the State on Wyngarden's age discrimination claims under *Price Waterhouse*.

**B.** Under the second method of proving age discrimination, as established in *McDonnell Douglas*, "the plaintiff must first establish a prima facie case of discrimination—that he was a member of a protected class, performing his work satisfactorily, and had adverse action taken against him." *Vaughan*, 542 N.W.2d at 538. The defendant must then articulate a legitimate nondiscriminatory reason for the action. *Id.* "If the defendant satisfies his burden of asserting a legitimate explanation, the burden then shifts to the plaintiff to prove the asserted reason is merely pretext and that the discriminatory motive played a substantial part in the actions taken." *Id.*

Under this analysis, we previously determined Wyngarden was required to establish a prima facie case by showing: (1) he was a member of a protected class, (2) he performed his work satisfactorily, and (3) he suffered an adverse employment action. *Wyngarden*, 2014 WL 4230192, at *11. We noted the parties agreed Wyngarden showed he was a member of a protected class and suffered an adverse employment action. *Id.* at *12. The remaining issue was whether Wyngarden presented substantial evidence to show he performed his work satisfactorily. *Id.*

The district court stated it did not make any difference if an informal probation agreement was in S.I.'s file originally because, "it wasn't apparently in there when those files were reviewed and that there was an effort made then to recreate it." By this finding, the court determined Wyngarden had not performed his work satisfactorily and granted the motion for directed verdict.[6]

We previously stated, "Wyngarden's performance is not measured against the standard of the 'ideal employee,' but rather is measured against 'what the employer could legitimately expect.'" *Id.* (quoting *Calder v. TCI Cablevision of Mo., Inc.*, 298 F.3d 723, 729 (8th Cir. 2002)). "The fact that an employee meets some expectations, however, does not mean that [he] meets the standard if [he] does not meet other significant expectations." *Id.*

We found:

> On appeal, Wyngarden, a JCO since 1973, claims he performed his work satisfactorily as indicated by a June 2008 performance report stating his work was "commendable" and "over all meets work standards." Defendants, however, contend Wyngarden did not perform his work satisfactorily as shown by Wyngarden placing juvenile S.I. into day treatment without a court order and later manipulating an Informal Adjustment Agreement by back-dating the document. The disagreement among the parties concerning Wyngarden's work performance is a factual dispute precluding summary judgment. Whether Wyngarden acted inappropriately in placing S.I. in a program in which the placement was approved twice by Wauters, the district director, is a fact question for the jury.

*Id.* (footnote omitted).

---

[6]   The court found Wyngarden had not established a prima facie case of age discrimination, and therefore, did not consider whether the State articulated a legitimate nondiscriminatory reason for the action or whether Wyngarden showed the asserted reasons for the adverse employment actions against him were merely pretextual. *See Vaughan*, 542 N.W.2d at 538.

On this issue, we determine the same factual question which precluded summary judgment also precludes the grant of directed verdict. Wyngarden testified he performed his work satisfactorily and presented performance reports to support his testimony. Additionally, Reese testified Wyngarden "did an excellent job with kids, cared greatly about the kids, the welfare of the kids, and their parents," and "I think he did a great job." Furthermore, Stephanie testified she felt Wyngarden did a good job with S.I. She stated she was "very satisfied" with the services S.I. received from Wyngarden. On the other hand, the State claimed Wyngarden did not perform his job satisfactorily, giving the reasons Wauters used as the basis for the three-day suspension.[7]

We determine there was sufficient evidence in the record to show Wyngarden was performing his job satisfactorily, considering his "performance is not measured against the standard of the 'ideal employee,' but rather is measured against 'what the employer could legitimately expect.'" *Id.* (quoting *Calder*, 298 F.3d at 729). We find the issue should have been submitted to the jury for a determination of whether Wyngarden had established a prima facie case of age discrimination.

We conclude the district court erred in granting a directed verdict to the State. In making this finding, we note it is generally the best course of action to

---

[7] We would like to point out the State's argument on this ground is somewhat circular. The State claims Wyngarden was not performing his work satisfactorily due to the stated reasons for the three-day suspension, which is the basis for Wyngarden's assertion of adverse employment action. However, one of the elements of a claim of age discrimination is adverse employment action. If having adverse employment action absolutely precluded a person from showing they were performing their job satisfactorily, no person receiving adverse employment action would be able to show they had been subjected to age discrimination.

wait until the completion of all evidence to grant a motion for directed verdict, except in the most obvious cases. *See Royal Indem. Co.*, 786 N.W.2d at 845. This is because "[i]t is considered more prudent for the court to submit even a weak case to the jury to avoid another trial in case of error." *Hill*, 804 N.W.2d at 98. We reverse the district court's grant of the motion for directed verdict and remand for further proceedings.

## IV.    Evidentiary Rulings

Wyngarden claims the district court erred in several evidentiary rulings during the trial. We will address those evidentiary issues we believe may arise again on retrial. *See State v. Nance*, 533 N.W.2d 557, 561 (Iowa 1995) ("Because we reverse and remand this case for retrial, we will review other evidentiary issues raised at trial that may arise on retrial.").

We review the court's rulings on the admission of evidence for an abuse of discretion. *City of Des Moines v. Ogden*, 909 N.W.2d 417, 423 (Iowa 2018). "'A district court abuses its discretion when it exercises its discretion on grounds clearly untenable or to an extent clearly unreasonable,' by issuing a decision that 'is not supported by substantial evidence' or one that 'is based on an erroneous application of the law.'" *Id.* (citations omitted).

**A.**    During Wyngarden's testimony he attempted to introduce exhibits 8 to 19, showing Wauters approved day treatment for juveniles on informal probation for other JCOs. One way to show the three-day suspension was pretextual would be to show younger, similarly-situated employees engaged in the same conduct but did not receive the same consequences. *See Wyngarden*, 2014 WL 4230192 at *11. We stated:

> Our test to determine whether individuals are similarly situated requires "that the other employees be similarly situated in all relevant respects before the plaintiff can introduce evidence comparing [himself] to other employees." "To be similarly situated, the comparable employees must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances."

*Id.* at *9 (quoting *Bennett v. Nucor Corp.,* 656 F.3d 802, 819 (8th Cir. 2011)).

Defendants objected on the ground the exhibits were irrelevant, hearsay, and not all of the exhibits referred to circumstances similar to S.I.'s situation. Wyngarden made an offer of proof and the documents were submitted as part of the offer. Wyngarden raised the issue again in an offer of proof of Reese's testimony. Outside the presence of the jury, Reese testified he and other JCOs in the judicial district were similarly situated to Wyngarden. The district court ruled Wyngarden did not meet his burden to show he was similarly situated to the other JCOs. The district court ruled, "So at this point I find that the plaintiff has not met its burden in being able to take that issue to the fact-finder."

Wyngarden had the burden to prove the other employees were similarly situated. *See Linn Co-op. Oil Co. v. Quigley*, 305 N.W.2d 729, 733 (Iowa 1981); *see also Kiray v. Hy-Vee, Inc.*, 716 N.W.2d 193, 204 (Iowa Ct. App. 2006) (noting plaintiff failed to meet her burden of proof because she had presented "no evidence there were similarly situated individuals outside her protected class who were treated differently").

In our previous decision, we stated, "The *fact-finder* should resolve whether the other JCO's who were not suspended were similarly situated in its process of resolving Wyngarden's claims . . . ." *Wyngarden*, 2014 WL 4230192, at *10 (emphasis added); *see also Srail v. Vill. of Lisle*, 588 F.3d 940, 945 (7th Cir. 2009)

("Although whether a comparator is similarly situated is usually a question for the fact-finder, summary judgment is appropriate when no reasonable fact-finder could find that plaintiffs have met their burden on the issue."); *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) ("Whether two employees are similarly situated ordinarily presents a question of fact for the jury.").

We find the district court abused its discretion in concluding Wyngarden did not present sufficient evidence to generate a jury question on the issue of whether other JCOs in the judicial district were similarly situated to him. Both Wyngarden and Reese testified other JCOs had clients who were on informal probation and were placed in a day treatment program. We determine the issue of whether these JCOs were similarly situated to Wyngarden should be decided by the fact-finder, rather than the court. *See Wyngarden*, 2014 WL 4230192, at *10.

**B.** Wyngarden claims the district court abused its discretion by finding Exhibit 59 was not admissible.[8] The exhibit shows an email exchange in which Wyngarden tells Buttel he is close to losing five hours of vacation and asked, "Any suggestions please?" Buttel responded, "I have no suggestions for you, do the best you can do." Wyngarden attempted to introduce the exhibit, the State objected on the ground of relevance, and the district court sustained the objection.

Outside the presence of the jury, Wyngarden argued the evidence was relevant to his claim of age discrimination. He stated at times his supervisors would not approve vacation, although if he did not take vacation hours he would

---

[8] Wyngarden's appellate brief asserts the court abused its discretion by ruling Exhibits 58 and 59 were inadmissible. The record he cites, however, refers to Exhibits 59 and 60. Because the record does not show he attempted to present Exhibit 58 and he does not challenge the ruling concerning Exhibit 60 on appeal, we will address only Exhibit 59.

lose those hours because he was at his vacation cap. Wyngarden testified his supervisors told him if he took more vacation it would inconvenience other workers, who he noted were younger.

Since the reason given by Wauters for denying vacation was how Wyngarden's absence would affect other JCOs and those JCOs were all younger than Wyngarden, the evidence is slightly relevant to the issue of whether Wyngarden was treated differently because of his age. *See* Iowa R. Evid. 5.401 (giving the definition of relevant evidence). We find the district court abused its discretion in finding the evidence was inadmissible because it was not relevant. *See* Iowa R. Evid. 5.402 ("Relevant evidence is admissible . . . .").

**C.** Wyngarden claims the district court abused its discretion by finding Exhibits 61 and 63 were inadmissible because they were not relevant. Exhibit 61 is an email from Wyngarden to District Court Administration concerning sick leave conversion and his vacation cap, and includes the statement, "The potential for retaliation remains a concern." Exhibit 63 is an email in which Wyngarden inquired about donating some of his vacation hours to a sick employee, rather than lose the hours due to the vacation cap.

We conclude the district court did not abuse its discretion in ruling these exhibits were not relevant. There was no evidence linking the exhibits to Wyngarden's claims of age discrimination. Furthermore, in a pre-trial ruling the court determined retaliation was not an issue in the case. Because the evidence was not relevant, it was not admissible. *See id.*

**D.** Wyngarden claims the district court should have permitted him to testify Wauters challenged his travel vouchers when he did not challenge the travel

vouchers of other, younger JCOs. The State objected on the ground of relevance. In an offer of proof, Wyngarden testified he was similarly situated to a younger JCO who had been subject to an investigation about travel vouchers. On questioning by the State, Wyngarden stated he did not have any personal knowledge about the other JCO's travel vouchers. The district court concluded there was not a proper foundation for the evidence.

"To properly admit a lay witness's testimony, a sufficient factual foundation must be established showing the witness's opinion is based on firsthand knowledge and 'personal knowledge of facts to which the observed facts are being compared.'" *Whitley v. C.R. Pharmacy Serv., Inc.*, 816 N.W.2d 378, 390 (Iowa 2012) (citation omitted). We find the district court did not abuse its discretion in finding the evidence concerning travel vouchers was not admissible due to the lack of a sufficient factual foundation. Wyngarden stated he did not have personal knowledge of the facts.

**E.** Wyngarden claims the district court abused its discretion by sustaining the State's objection to Exhibit 83. Exhibit 83 is an email from Wauters to Buttel, and copied to Reese and Wyngarden, stating S.I.'s case was to be transferred to Reese, as requested by Stephanie. Wyngarden wrote on the copy of the email, "[Stephanie] denies this statement." The State objected on the basis of hearsay to the handwritten comment on the copy of the email. The court sustained the objection and the email was not admitted.

On retrial, we find the email itself, without the handwritten comment, does not contain hearsay and was relevant to Wyngarden's claim the adverse

employment action taken against him was pretextual. The handwritten comment is hearsay and therefore would properly be excluded. *See* Iowa R. Evid. 5.802.

**F.** During the trial, Reese testified, "I believe that they were targeting Mr. Wyngarden." The State objected on the grounds of improper opinion testimony, lack of foundation, and relevance. The court sustained the objection, struck the answer from the record, and instructed the jury not to consider the statement. Wyngarden claims the district court abused its discretion in ruling the statement was inadmissible.

"Lay witnesses may testify to their opinions or inferences if the testimony is rationally based on the witness's perceptions and it is helpful to giving the jury a clear understanding of either the witness's testimony or a determination of a fact at issue in the case." *Whitley*, 816 N.W.2d at 390; *see also* Iowa R. Evid. 5.701. Reese testified he was basing his opinion on his experience and observations. Reese's opinion testimony was rationally based on his perception and would have been helpful to a determination of whether Wyngarden was being treated differently than other employees.

"We are committed to a liberal rule on the admission of opinion testimony . . . ." *Mensink v. Am. Grain*, 564 N.W.2d 376, 380 (Iowa 1997). We conclude the district court abused its discretion in ruling Reese's opinion testimony concerning whether their supervisors were targeting Wyngarden was not admissible.

**V.    Conclusion**

We conclude our previous finding of genuine fact issues for trial on the question of age discrimination would not automatically preclude a directed verdict

in this case. After considering the evidence presented by Wyngarden, we conclude the district court erred in granting directed verdict to the State. In making this finding, we note it is generally the best course of action to wait until the completion of all evidence to grant a motion for directed verdict, except in the most obvious cases. We have also addressed several evidentiary issues we believe may arise again on retrial. We reverse the district court's grant of the motion for directed verdict and remand for further proceedings.

**REVERSED AND REMANDED.**