# IN THE COURT OF APPEALS OF IOWA

No. 13-0863
Filed August 27, 2014

**DON WYNGARDEN,**
Plaintiff-Appellant,

**vs.**

**STATE OF IOWA JUDICIAL BRANCH,**
**JOHN WAUTERS, and BRUCE BUTTEL,**
Defendants-Appellees.

_____

Appeal from the Iowa District Court for Wapello County, Sherman W. Phipps, Judge.

In this age discrimination case, Don Wyngarden appeals the district court's ruling granting summary judgment to the defendants. **REVERSED AND REMANDED.**

Steven Gardner of Denefe, Gardner & Zingg, P.C., Ottumwa, for appellant.

Thomas J. Miller, Attorney General, and Jeffrey C. Peterzalek and Julie J. Bussanmas, Assistant Attorneys General, for appellees.

Heard by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**BOWER, J.**

*I.     Background Facts and Proceedings*

On October 9, 2008, Don Wyngarden, a long-tenured juvenile court probation officer (JCO) employed by the Eighth Judicial District of Iowa, received a written reprimand from his supervisor, John Wauters.  In the reprimand, Wauters claimed Wyngarden acted with insubordination.  Bruce Buttel, Wyngarden's supervisor, "had forwarded an email from DHS" to all staff Buttel supervised "with instructions to verify the attached client information that was provided pursuant to the protocol between DHS and Juvenile Court Services." Upon Wyngarden receiving this email, he replied, "I made the corrections once.  I do not intend to make the same corrections again," and Wyngarden included the other JCOs on his reply.  Wauters stated such action was "[i]nsubordinate and disobedient to the direct instructions of [Wyngarden's] supervisor."  The reprimand concluded: "This reprimand should serve as a strong warning that your conduct will continue to be monitored and that another incident of this nature will result in a more severe disciplinary action, up to and including discharge."

The Personnel Policies Manual for Employees of the Iowa Judicial Branch establishes a four-step grievance process available to employees. Wyngarden initiated this process by filing, on October 22, 2008, a grievance concerning the written reprimand with the Eighth Judicial District Court Administrators Office. Wyngarden's grievance stated "contents of the October 9, 2008 letter of written reprimand authorized by supervisors is incomplete and inaccurate representation

of the facts presented in oral and written form at meeting held August 8, 2008."[1] At this first step of the grievance process, Buttel found, after meeting with Wyngarden and accepting numerous documents, "no specific grounds for the grievance. Your grievance is hereby denied."

In November 2008, Wyngarden appealed Buttel's decision. At this second step of the grievance process, Wauters, after meeting with Wyngarden, stated Wyngarden "offered no explanations as to how the documents were related to the letter of reprimand . . . . The grievance is hereby denied." In December 2008, a meeting was held on Wyngarden's next step. At this third step, Deborah Dice, the District Court Administrator in the Eighth Judicial District, concluded Wyngarden's "email response . . . was insubordinate and your written letter of reprimand stands. Grievance denied."

At the fourth and final step of the grievance process, Wyngarden again "requested that the written reprimand be withdrawn." On May 5, 2009, William Snyder, Director of Human Resources for the State Court Administrator, denied the grievance, stating:

> On its face, the plain words of the email state that Mr. Wyngarden does not intend to comply with Mr. Buttel's instructions to correct the date supplied by Ms. Clefish. As such Mr. Wyngarden is insubordinate in that he is refusing to carry out the instructions given to him by Mr. Buttel. The insubordinate nature of the email is enhanced because Mr. Wyngarden chose to copy all of his coworkers.[2]

---

[1] The grievance is not in the record, but this language is the summary of the grievance as provided in Bruce Buttel's written decision.
[2] Mr. Snyder concluded:
> Mr. Wyngarden also asserts that he requested the assistance of a co-worker and that request was rejected. Mr. Wyngarden recorded all of his meeting with Mr. Wauters and Mr. Buttel and provided copies of the

Eight months later, on January 13, 2010, Wauters issued Wyngarden a notice of suspension, stating Wyngarden was suspended without pay for three working days due to "violations of the work rules of the Eighth Judicial District Juvenile Court services as they pertain to the handling of the juvenile cases" of S.I. and Z.J. Ultimately, the claims concerning Wyngarden's handling of Z.J.'s case were dismissed,[3] and such claims are no longer at issue.

Adhering to the four-step grievance process, Wyngarden filed a grievance concerning his suspension. The grievance process for the suspension, however, did not involve the first two steps because "[if] an individual serves as the administrative authority in two or more of the steps, the grievance shall proceed directly to the highest applicable step." *See* Section 8.2, Personnel Policies for Employees of the Iowa Judicial Branch. Accordingly, the first step for this grievance was step three.[4]

transcripts of the meetings in support of this grievance. I have reviewed these transcripts and cannot find any instance where the transcript supports this allegation.

What the transcripts do document is Mr. Wyngarden's steadfast refusal to accept the fact that his email demonstrated insubordination and his refusal to recognize that announcing his refusal to all of his coworkers undermines Mr. Buttel's supervisory authority.

[3] The third-step decision stated that the long delay in addressing the identified problems in the Z.J. case nullified its use as supporting evidence for the types of problems characteristic of the S.I. case. The defendants did not contest this determination.

[4] The record does not contain a cover page for the suspension's third-step grievance decision. However, the suspension's fourth-step grievance decision states, "Mr. Edmondson issued his decision on March 19, 2010. He upheld the 3-day suspension based on Mr. Wyngarden's inappropriate conduct and work rule violations regarding the [S.I.] case." This characterization of Mr. Edmondson's decision is consistent with the decision in the record prior to the fourth-step grievance decision. We therefore infer that Mr. Edmondson's decision was the third step.

Wyngarden's grievance challenging his three-day suspension was filed on February 1, 2010. Wyngarden's typed answer on the grievance form's (italicized) prompts stated:

> *State the issue involved and the date this incident took place:*
> Chief JCO John Wauters and JCO IV presented a letter on January 21, 2010 which concludes by imposing three days unpaid leave of absence sanctions upon [Wyngarden] effective February 3-5, 2010. Said decision is hereby grieved. It is noted Mr. Wauters and Mr. Buttel refused to discuss and refused to provide any written or audio or any information relevant to their investigation or validation of their decision.
> *Remedy Requested:*
> That said decision be rescinded, that employee [Wyngarden] be made whole, and that Mr. Wauters and Mr. Buttel immediately share any and all evidentiary materials [with Wyngarden] for use in preparation of Step 3 proceedings.

Wyngarden specified the "Personnel Policies Violated" included Policies 1.9 (Violence Free Workplace—harassing or intimidating behavior), 7.1 (Discipline—employee shall not discipline an employee without just cause), and 10.3 (Personal Actions and Appearances).

As enumerated in the third-step grievance decision, Wauters suspended Wyngarden due to three violations of the work rules. First, Wyngarden placed a juvenile, S.I., who was on informal probation in a day treatment program in violation of a 9/28/04 directive stipulating that only juveniles on formal probation were eligible for such placements. We note the record also shows Wauters, on May 12, 2009, signed and approved the "application for supervised community treatment" for S.I. with the "informal" box clearly checked and with day treatment starting May 13, 2009, and ending June 30, 2009. On July 2, Wauters signed a

similar application and approved additional funding for day treatment for S.I., starting July 1, 2009, and ending August 31, 2009.

The second and third alleged violations of the work rules were:

> 2. Placing a juvenile [S.I.] on informal probation after intake without immediately drafting an informal adjustment agreement that is signed by the parties; and
> 3. Having parties sign an informal adjustment agreement four months after placing the juvenile [S.I.] on informal probation and attempting to justify the tardy preparation by writing in an earlier date by his name and the word "Resigned" at the top of the page.

After the grievance meeting, the administrator found: (1) Wyngarden received an email dated September 28, 2004, stipulating that juveniles on informal probation are not eligible for placement in a day treatment program and Wyngarden understood JCOs can only place such juveniles in treatment if they have a court order; (2) There was no court order for S.I.'s placement in treatment; and (3) "Although Mr. Wyngarden did an intake on [S.I.] around May 12, 2009 and decided to handle the case as an informal probation, he has never been able to substantiate that the parties signed a written informal adjustment agreement until September 4, 2009." The decision concluded:

> Mr. Wyngarden's problems with the [S.I.] case should have ended with his failure to draft a timely informal adjustment agreement. Instead he compounded them by putting the date of May 12, 2009 by his signature on the informal adjustment agreement signed on September 4, 2009 and by writing the word "Resigned" at the upper right hand corner of the agreement.[5]

---

[5] This allegedly fraudulent document concerning S.I is nowhere to be found in the appendix or the original record. When asked about this document at oral argument, counsel for the appellees/defendants stated the document is not in the record and "is not in dispute." However, counsel for appellant/plaintiff strongly disagreed, stating the falsification assertion is a "fantasy" and the nonbinding administrative grievance process should be disregarded.

Wyngarden appealed,[6] and on April 30, 2010, Betty Buitenwerf, legal counsel for the State Court Administrator, issued a decision and identified the Fourth Step Grievance Appeal Issue: "Whether the 3-day suspension the Grievant received for violation of work rules and procedures was appropriate." Her first sentence under the "Background" heading stated: "Mr. Wyngarden filed a grievance on February 1, 2010 regarding his 3-day suspension without pay."

The Buitenwerf decision detailed "Grievant's Position":

> 3-day Suspension: The Grievant acknowledges that he needed to have an informal agreement and that he made a mistake regarding the informal agreement in the [S.I.] case. However, Grievant indicates that the discipline was too harsh since he has had no prior discipline and if management would have let him know about their concerns he would have corrected them and made it right.
> Workplace Violence: Grievant contends that he was given a low performance rating in two areas during his performance evaluation in July 2009 and that the [S.I.] investigation was initiated by Mr. Wauters and Mr. Buttel to substantiate those low ratings.

Before addressing the three-day suspension, Buitenwerf first described the evidence Wyngarden and Wauters submitted at the grievance meeting:

> Mr. Wyngarden indicated that he returned from vacation on September 4, 2009, was reviewing files, including the [S.I.] case, and noticed there was no informal adjustment agreement. Therefore he prepared one and signed it in blue ink for May 12, 2009. Underneath the May date, Mr. Wyngarden put, in black ink, September 9, 2009, the date he secured Mrs. I[ ] and [S.I.'s] signatures. Then Mr. Wyngarden wrote on the top right hand corner of the Agreement "resigned 9/4/2009" with his initials.
> Mr. Wauters submitted evidence that he had received statements from Mrs. I[ ] and [S.I.] that Mr. Wyngarden had asked

---

[6] The appendix does not provide the date Wyngarden filed the fourth-step grievance.

them to sign and back date the Agreement for May 12, 2009. They refused to do this.[7]

"Based on all the evidence and facts surrounding" Wyngarden's "actions in relation to the Agreement," Buitenwerf found "there is no way" Wyngarden "made an unintentional mistake":

> If this were the case, Mr. Wyngarden should have reported such errors to his supervisors. He did not do this. He knew that he violated policy and work rules by not issuing an informal adjustment and by sending [S.I.] to a day care treatment program when there was no court ordered formal placement. Mr. Wyngarden consciously attempted to cover-up the violations by back dating the Agreement and attempting to manipulate his clients into back dating the Agreement.
> . . . .
> Another factor that makes the intentional actions so egregious is the fact that Mr. Wyngarden has been a juvenile court officer for 36 years and he has handled many formal, court-ordered proceedings for juveniles, as well as informal adjustments. He knew the difference and what was required in each type of proceeding.

Buitenwerf rejected Wyngarden's claim the suspension was too harsh and should be rescinded, affirmed the recommendations of Mr. Edmonson in his third-step grievance decision, and denied the grievance.

On July 26, 2010, Wyngarden filed an age-discrimination complaint with the Iowa Civil Rights Commission, stating: "I have received a written reprimand placed in my personnel file and a subsequent three day suspension imposed by my supervisors John Wauters and Bruce Buttel because of my age and their desire to attempt to force/involuntarily encourage my retirement from employment because of my age." He listed April 30, 2010, as the date of the

---

[7] The appendix and record do not contain this allegedly-fraudulent document. The only documents available to the court concerning the placement of [S.I.] do not contain Wyngarden's signature, nor do they contain the alleged fraudulent marks.

"most recent" discriminatory incident. Wyngarden checked the following boxes: Denied Benefits; Disciplined/Suspended; Forced to Quit/Retire (Attempt); Harassment; Treated Differently.

On November 30, 2010, Wyngarden received an Administrative Release (Right-To-Sue Letter) from the Iowa Civil Rights Commission (ICRC). The ICRC found Wyngarden's complaint "was timely filed with the [ICRC] as provided in Iowa Code section 216.15(12)." That section, renumbered in 2011 as section 216.15(13), stated: "[A] claim under this chapter shall not be maintained unless a complaint is filed with the commission within three hundred days after the alleged discriminatory or unfair practice occurred." Iowa Code § 216.15(12) (2009).

On January 28, 2011, Wyngarden filed a petition at law claiming age discrimination under Iowa Code chapter 216 (2011), the Iowa Civil Rights Act.[8] Wyngarden's petition noted he was fifty-nine years old and his petition was filed "within 180 days of the acts of which he complains." Wyngarden alleged his employer engaged in a series of acts of age discrimination, asserting:

> 15. *That for a considerable time* including the date of the filing of the complaint with the [ICRC], Defendants discriminated against [him] with respect to the terms and conditions of his employment based upon his age.
> 16. *That for a considerable period of time* up to and including the filing of the complaint of discrimination herein, the Defendants retaliated against [him] in response to his claims of age discrimination.
> 17. *That for a considerable time* . . . Defendants retaliated against the Plaintiff in response to his claims of age discrimination, and such retaliation has continued.

---

[8] Wyngarden also included a claim based on the federal Age Discrimination in Employment Act (29 U.S.C. § 626(c)(1)). His amended petition added a claim based on Iowa Code chapter 91A, the Iowa Wage Payment Collection Law. Neither claim is a part of this appeal.

(Emphasis added.) Wyngarden's April 2011 amended petition included these same assertions but expanded the "Factual Background" section.

On January 4, 2013, defendants filed a motion for summary judgment, claiming the scope of Wyngarden's age discrimination claim was limited to allegations related to a three-day suspension:

> First, Mr. Wyngarden failed to exhaust administrative remedies. Mr. Wyngarden filed his civil rights complaint with the [ICRC] on July 26, 2010, alleging age discrimination. The claim alleged age discrimination when he received a written reprimand and a three-day suspension. Wyngarden never attempted to amend the complaint. Within his Amended Petition, however, Mr. Wyngarden raises several claims that were not included with the complaint. Specifically, Mr. Wyngarden alleges retaliation and loss of benefits. Because Mr. Wyngarden failed to exhaust his administrative remedies, claims related to alleged acts of retaliation and loss of benefits must be dismissed.

We note Wyngarden, on his ICRC complaint form, specifically checked the employer-action of "denied benefits" and further note the form does not contain an employer-action choice of retaliation in its employer-actions list. Wyngarden did check "treated differently." The defendants' motion continued:

> Second, Mr. Wyngarden's complaint relating to the written reprimand must fail as a matter of law because it is time-barred from relief. An ICRC complaint must be filed within 300 days after the alleged discrimination. Iowa Code § 216.15(13). The written reprimand occurred on October 9, 2008. Plaintiff filed his ICRC complaint on July 26, 2010, 656 days after the reprimand.
> Third, Mr. Wyngarden cannot establish a prima facie case of age discrimination because he cannot show that he was performing his work satisfactorily. And, Mr. Wyngarden's prima facie case must fail because he has offered no evidence that the three-day suspension was in any way related to his age.[9]

---

[9] To support this element, Wyngarden submitted an affidavit in his resistance describing conversations with Wauters and Buttel.

Fourth, Mr. Wyngarden's age discrimination claim fails as a matter of law because the State had a legitimate non-discriminatory reason for his suspension.

Fifth, Mr. Wyngarden cannot prove by a preponderance of evidence that the legitimate reasons offered by Defendants were a pretext for discrimination.

Wyngarden's resistance to summary judgment included his April 2013 affidavit stating he is sixty-one and, to his knowledge, younger JCOs were not investigated or disciplined for placing juveniles they supervised "in day treatment while on informal adjustment and not under court order." Also, on "September 16, 2009, [Wauters] stated to me that everyone else (JCO's) in the district complied with the requirements that no informal adjustment suspension cases receive day treatment. I subsequently learned Mr. Wauters statement was false." Wyngarden's resistance included numerous application documents from younger JCOs with the application's "informal" status checked, day treatment requested, and the "approved" blank checked—Wauters signature underneath (Aug. 2006, Nov. 2006, April 2007, Sept. 2007, Nov. 2007, Jan. 2008, May 2008, June 2008).

Wyngarden's affidavit also noted, on September 16 Wauters stated he "was being removed from . . . the [S.I.] case at the request of Mrs. I[ ]," and Wyngarden "subsequently learned" that statement was "false." Wyngarden also stated, "Mrs. I[ ] has personally informed me she did no[t] request I be removed as her daughter's JCO and that claims to that [e]ffect are false."[10]

Finally, Wyngarden's affidavit provided:

---

[10] Wyngarden's resistance included a September 24, 2009 note from Mrs. I. stating both JCOs in the Ottumwa office (Wyngarden and Reese) are "very understanding and respectful gentlemen and treated myself and [S.I.] with respect and did [their] best to help me get the help [she] needs, which we believe is substance abuse counselling . . . . Both [JCOs] were very understanding and helpful."

4. In both my interview with [Wauters] and [Buttel] on August 8, 2008, and during our meeting on October 9, 2009, both Wauters and Buttel made comments that I should retire and that I did not seem happy. Wauters specifically stated that I was not losing vacation benefits; I just could not accrue further benefits. He also told me he did not intend to approve my future vacation requests as it would hinder my ability to get my work done and I would just get further behind.

5. My written reprimand and three (3) day suspension were clearly intended by Wauters and Buttel to get me to retire and were given to me because of my age compared to the age of the other JCO's in the district.

In May 2013, the district court granted defendants' motion for summary judgment, stating Wyngarden's age discrimination claim relating to the written reprimand of October 9, 2008 fails "as a matter of law because [it is] time-barred by Iowa Code Section 216.15(13) [(2011)]." The court found Wyngarden's ICRC complaint regarding the reprimand was not filed until 656 days after its occurrence on July 28, 2010, and thus was not within the requisite three hundred days.

The court also rejected Wyngarden's argument the defendants have "somehow discriminated against him on the basis of age by applying to him the statutory accumulation limits regarding vacation time" found in Iowa Code section 70A.1. The court found nothing "in the pleadings alleges [section 70A has] been applied to [Wyngarden] by defendants in a manner different than they are required by statute to be applied to any other employee of the Iowa State Judicial Branch."

The district court also ruled "[t]he scope of Plaintiff's age discrimination claim is limited to Plaintiff's allegations related to a three-day suspension imposed upon him by Defendants pursuant to a notice to Plaintiff dated January

13, 2010." The court found the undisputed facts "establish that [Wyngarden] was not following established policies and procedures applicable to his job, was not performing his work satisfactorily at the time he received the three-day suspension on January 13, 2010, and that his suspension was based thereon." The court made no mention of the facts contained in Wyngarden's affidavit resisting summary judgment and did not discuss the fact Wauters, on two separate occasions, had approved, in writing, the day treatment placement for which Wyngarden was being suspended. The court, without analysis, summarily concluded Wyngarden "cannot set forth a prima facia case of age discrimination."

On June 4, 2013, Wyngarden filed a notice of appeal, raising a single issue: Did the district court err in determining that undisputed facts required the granting of summary judgment in favor of the defendants, State of Iowa Judicial Branch, John Wauters, and Bruce Buttel?

## II. Scope and Standards of Review

We review appeals from orders granting summary judgment for the correction of legal error. *Freedom Fin. Bank v. Estate of Boesen*, 805 N.W.2d 802, 806 (Iowa 2011). Summary judgment is appropriate only when the entire record demonstrates that no genuine issue of material facts exists and the moving party is entitled to judgment as a matter of law. *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007); *see* Iowa R. Civ. P. 1.981(3).

We review the record before the district court to determine whether a genuine issue of material fact existed and whether the district court correctly

applied the law. *Sain v. Cedera Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 121 (Iowa 2001). The record on summary judgment includes the pleadings, depositions, affidavits, and exhibits presented. *Stevens*, 728 N.W.2d at 827. We review the evidence in the light most favorable to the nonmoving party. *Merriam v. Farm Bureau Ins.*, 793 N.W.2d 520, 522 (Iowa 2011). Even where the facts are undisputed, summary judgment is inappropriate "if reasonable minds could draw from them different inferences and reach different conclusions." *Goodpaster v. Schwan's Home Serv., Inc.*, 849 N.W.2d 1, 6 (Iowa 2014) (reversing summary judgment and ruling the plaintiff presented a jury issue on whether the termination was motivated by his disability).

## II. Analysis

**A. Summary Judgment.** Wyngarden contends the district court erred in granting summary judgment. To find the district court erred in granting summary judgment, we need only find the existence of a fact question. *Sain*, 626 N.W.2d at 121. If we find a fact question concerning Wyngarden's age discrimination claim under the Iowa Civil Rights Act, then the court's grant of summary judgment was improper.

In ruling on a motion for summary judgment, every legitimate inference that can be reasonably deduced from the evidence should be afforded the resisting party, here Wyngarden. *See Lewis v. State ex rel. Miller*, 646 N.W.2d 121, 124 (Iowa Ct. App. 2002). An inference is legitimate if it is "rational, reasonable, and otherwise permissible under the governing substantive law." *Id.* An inference is not legitimate if it is based upon speculation or conjecture. *Id.* If

reasonable minds may differ on the resolution of an issue, a genuine issue of material fact exists. *Id.*

The Eighth Circuit Court of Appeals recognizes summary judgment is appropriate in employment discrimination cases. *See Torlowei v. Target,* 401 F.3d 933, 935 (8th Cir. 2005) (affirming district court's grant of summary judgment because plaintiff "failed to present a prima facie case of race discrimination").[11] "There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including [a case] alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) ("Because summary judgment is not disfavored and is designed for 'every action,' panel statements to the contrary are unauthorized and should not be followed."). Nevertheless, as in all summary judgment cases, district courts are cautioned:

> [A]t the summary judgment stage the court should *not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter.* Rather, the court's function is to determine whether a dispute about a material fact is genuine, that is, whether a reasonable jury could return a verdict for the nonmoving party based on the evidence. The evidence of the non-movant [Wyngarden] is to be believed, and *all justifiable inferences* are to be drawn in [Wyngarden's] favor. *If reasonable minds could differ* as to the import of the evidence," *summary judgment is inappropriate.*

*Id.* at 1054 (Smith, J., concurring in part and dissenting in part) (quoting *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996)).

---

[11] Because the Iowa Civil Rights Act is modeled, in part, after Title VII, Iowa courts have traditionally looked to federal law for guidance in interpreting it. *Pecenka v. Fareway Stores, Inc.*, 672 N.W.2d 800, 803 (Iowa 2003). "Iowa courts, however, are not bound by federal law, despite consistent utilization of the federal analytical framework." *Id.*

**B. Age Discrimination.** The Iowa Civil Rights Act (ICRA) prohibits age discrimination by employers. Iowa Code § 216.6(1)(a). The statute provides it "shall be an unfair or discriminatory practice for any person" to discriminate in employment against any employee "*because of* the age" of such employee. *Id.* (emphasis added). The legislature's purpose in banning employment discrimination based on [age] was to prohibit conduct which, had the victim [not been a member of the protected class,] would not have otherwise occurred." *Deboom v. Raining Rose, Inc.*, 772 N.W.2d 1, 6 (Iowa 2009) (discussing sex discrimination under ICRA). Wyngarden claims his employer, and supervisors Buttel and Wauters, discriminated against him "because of" his age.

In general, plaintiffs survive summary judgment on age discrimination claims by introducing direct or indirect evidence of such discrimination, which leaves a fact question. *Underwood v. Monroe Mfg., L.L.C.*, 434 F. Supp. 2d 680, 687 (S.D. Iowa 2006). "[C]ourts analyze age discrimination cases under one of two analytical frameworks; the *Price Waterhouse* direct evidence analytical framework or the *McDonnell Douglas* indirect evidence, burden-shifting analytical framework." *Id.* (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989) and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1974)); *see Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 893-94 (Iowa 1990) (citing the *Price Waterhouse* and *McDonnell Douglas* standards in an age discrimination case); *contra Gross v. FBL Fin. Serv. Inc.*, 557 U.S. 167, 174 (2009) (holding the burden-shifting framework of *Price Waterhouse* is not applicable to a disparate treatment claim under the *federal* age discrimination act and ruling the ordinary

meaning of the words "because of" require a showing that the adverse employment action would not have occurred but for the prohibited motive).

**C. Statute of Limitations & Continuing Violation Doctrine.** Without analysis, the district court treated the denial of benefits, the reprimand, and the suspension as unrelated acts and ruled "the scope [of the age discrimination claim] is limited to the three-day suspension" and "the claim based on the written reprimand is time-barred." Before we apply the *Price Waterhouse and McDonnell Douglas* standards to the facts herein, we first address the court's statute-of-limitations ruling.

Wyngarden challenges the court's ruling, and the defendants reply the reprimand, as a separate issue, falls outside the statute of limitations. We disagree. First, Wyngarden's administrative complaint alleged numerous violations—"denied benefits," reprimanded, "treated differently," and suspended—and the ICRC's "right to sue" letter specifically stated Wyngarden's complaint was "timely filed" under the statute. Second, Wyngarden's petition clearly alleges the defendants' discrimination and retaliation continued "for a considerable time." Third, Wyngarden's affidavit claimed the reprimand and suspension "were clearly intended by Wauters and Buttel to get me to retire and were given to me because of my age compared to the age of the other JCO's in the district." Under the "continuing violation" doctrine, "if the alleged discriminatory act is of a 'continuing nature,' then the act is considered to have occurred as of the last date of the act." *Hy-Vee Food Stores, Inc. v. Iowa Civil Rights Comm'n*, 453 N.W.2d 512, 527 (Iowa 1990) (stating federal cases on

"continuing violation" are instructive and noting a "failure to promote" is viewed as ongoing discrimination).

> In general the "continuing violation" doctrine does not excuse compliance with the time limits for filing a charge. But if a violation is continuing, the time does not begin to run when the discrimination first happens. Instead the action is considered filed in time if there are discriminatory acts within the limitations period.

*Id.* It is undisputed the alleged discriminatory act of suspension is within the limitations period.

In evaluating whether the acts are a part of a series or isolated, one factor we consider is permanence—"whether an employee should or should not realize the employer is discriminating." *Id.* at 528. Under this factor, the limitations period "is not triggered when the consequences of the discriminatory acts is something the employee might reasonably expect without suspecting discrimination. For example, an employee would probably not suspect that the employer is discriminating when the employer's reasons for the acts are pretextual and seemingly legitimate." *Id.* The *Hy-Vee* court upheld the commission's finding that the employee "may not have fully realized that Hy-Vee was engaging in a consistent discriminatory practice" until another employee received two promotions. *Id.* at 529.

Similarly, based on the current record, Wyngarden may not have fully realized his employer was engaging in consistent age discrimination in its resolution of the employee benefits issue or the reprimand issue or the retaliation issue until the employer suspended him while not acting to suspend younger employees who had taken the same action for which he was suspended. *See*

*Srail v. Vill. of Lisle*, 588 F.3d 940, 945 (7th Cir. 2009) (stating whether a comparable employee is similarly situated is "usually a question for the fact-finder"). Our test to determine whether individuals are similarly situated requires "that the other employees be similarly situated in all relevant respects before the plaintiff can introduce evidence comparing [himself] to other employees." *Bennett v. Nucor Corp.*, 656 F.3d 802, 819 (8th Cir. 2011). "To be similarly situated, the comparable employees must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.*

Based on the unique and specific circumstances of this case, on the continuing violation doctrine, on Wyngarden checking "Denied Benefits" and "Treated Differently" on his ICRC form, while also specifically referring to the reprimand and the suspension, and based on our finding below that factual issues preclude summary judgment, we also conclude, on this record, the statute of limitations does not limit the scope of the age discrimination claim to the suspension issue. The fact-finder should resolve whether the other JCO's who were not suspended were similarly situated in its process of resolving Wyngarden's claims based on the employer's (1) denial of vacation benefits, (2) issuance of a reprimand, (3) issuance of a suspension, and (4) retaliation.

**D.** ***Price Waterhouse.*** We now turn to Wyngarden's claim he has raised a genuine issue of material fact under *Price Waterhouse*. The *Price Waterhouse* Court considered 42 U.S.C. § 2000e–2(a)(1) (prohibiting discrimination "because of" the prohibited class) in a mixed-motives case—a case where "there is no one

'true' motive behind the decision," because "the decision is a result of multiple factors, as least one of which is legitimate." *Price Waterhouse*, 490 U.S. at 260 (White, J., concurring in judgment). In such cases, the plaintiff typically bears the burden of persuasion "to establish that age was a motivating or determining factor in the employer's decision." *See Gross v. FBL Fin. Servs., Inc.*, 588 F.3d 614 (8th Cir. 2009). Thereafter, an employer "could avoid a finding of liability by proving that it would have made the same decision even if it had not allowed gender [or age] to play such a role." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93-94 (2003).

In Iowa, the *Price Waterhouse* "method is used when direct or circumstantial evidence is presented which tends to establish age was a determining factor in the employment decision." *Vaughan v. Must, Inc.*, 542 N.W.2d 533, 538 (Iowa 1996). The "direct evidence" requirement was recently discussed by our Eighth Circuit:

> Direct evidence in this context [of discrimination] is not the converse of circumstantial evidence, as many seem to assume. Rather, direct evidence is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action. Thus, "direct" refers to the causal strength of the proof, not whether it is "circumstantial" evidence. A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial. But if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext.

*Torgerson v. City of Rochester*, 643 F.3d 1031, at 1043-44 (8th Cir. 2011) (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)).

Thus, under "the *Price Waterhouse* method, the plaintiff must present credible evidence of conduct or statements of supervisors which may be seen as discrimination sufficient to support an inference that the discriminatory attitude was a motivating factor." *Vaughan*, 542 N.W.2d at 538. After the plaintiff's "*direct evidence* has been presented, the employer then bears the burden of establishing by a preponderance of the evidence it would have made the same decision even in the absence of the improper motive." *Id.* at 538-39 (emphasis added). The employer's "burden of proof is proof by a preponderance of the evidence, and is not satisfied merely by articulating a reason for the" disputed employment actions. *Id.* at 539.

Wyngarden claims statements made by Wauters and Buttel that referenced retirement are direct evidence of age discrimination and points to the statements, "I don't feel you're happy—you can retire," "most people take a couple of weeks each year," "vacation puts you further behind," and "you will be more stressed." When we consider those statements in light of the following: (1) the statements were made by decision makers during the disciplinary process, (2) the suspension occurred less than a year after the reprimand, and (3) numerous documents showed younger employees were not disciplined for engaging in the same action that lead to Wyngarden's suspension, we conclude the record shows Wyngarden presented sufficient direct evidence of

discrimination to raise a genuine issues of material fact under the *Price Waterhouse* standard.

**E.  *McDonnell Douglas.*** A plaintiff establishes a prima facie case of age discrimination by showing three elements: 1) plaintiff is a member of a protected class, 2) plaintiff performed his work satisfactorily, and 3) plaintiff suffered an adverse employment action. *Vaughan*, 542 N.W.2d at 538. The district court, without detailing any undisputed facts, ruled Wyngarden failed to make a prima facia case. The court, therefore, did not consider the second and third steps of the *McDonnell Douglas* analysis.

Under the *McDonnell Douglas* indirect evidence, burden-shifting analytical framework, a plaintiff "must first establish a prima facie case of age discrimination." *Calder v. TCI Cablevision of Missouri, Inc.*, 298 F.3d 723, 729 (8th Cir. 2002). Once a plaintiff establishes a prima facie case of age discrimination, "the burden of production shifts to [the defendants] to articulate a legitimate, nondiscriminatory reason for any adverse employment action against" the plaintiff. *Id.* If defendants meet this burden, Wyngarden "must then present evidence sufficient to raise a question of material fact as to whether [the defendants'] proffered reason was pretextual and to create a reasonable inference that age was a determinative factor in the adverse employment decision." *See id.* Wyngarden maintains, "at all times, the ultimate burden of proof and persuasion" that the defendants discriminated against him. *Torgerson*, 643 F.3d at 1046.

The parties agree Wyngarden has proven elements one and three of the *McDonnell Douglas* analysis. Thus, the issue under the *McDonnell Douglas* analysis is whether there are genuine issues of material fact concerning the second element—whether Wyngarden performed his work satisfactorily. Wyngarden's performance is not measured against the standard of the "ideal employee," but rather is measured against "what the employer could legitimately expect." *See Calder*, 298 F.3d at 729. "The fact that an employee meets some expectations, however, does not mean that [he] meets the standard if [he] does not meet other significant expectations." *Id.*

On appeal, Wyngarden, a JCO since 1973, claims he performed his work satisfactorily as indicated by a June 2008 performance report stating his work was "commendable" and "over all meets work standards." Defendants, however, contend Wyngarden did not perform his work satisfactorily as shown by Wyngarden placing juvenile S.I. into day treatment without a court order and later manipulating an Informal Adjustment Agreement by back-dating the document.[12] The disagreement among the parties concerning Wyngarden's work performance is a factual dispute precluding summary judgment. Whether Wyngarden acted inappropriately in placing S.I. in a program in which the placement was approved twice by Wauters, the district director, is a fact question for the jury.

---

[12] This back-dated Informal Adjustment Agreement is not in the appendix or in the record. But, the grievance decision shows Wyngarden admitting to taking these actions during the grievance meeting. When asked at oral argument about this document and its whereabouts in the record, counsel for appellee/employer indicated it is not in the record and it is an "undisputed fact." Counsel for appellant/Wyngarden responded, stating at oral argument that the existence of this document is a disputed fact.

If the fact-finder determines Wyngarden has made a prima facie case of age discrimination, defendants have the burden of presenting a legitimate, nondiscriminatory reason for suspending Wyngarden. The defendants contend improper placement of [S.I.] into day treatment without a court order and later manipulating an Informal Adjustment Agreement by back-dating the document is a legitimate, nondiscriminatory reason for suspending Wyngarden. While the defendants emphasize the fact Wyngarden appealed his suspension twice during a grievance process and both times the suspension was upheld, it is important to acknowledge Wauters signed and approved [S.I.'s] placement into day treatment on two separate occasions.

If the fact-finder finds the defendants had a legitimate, nondiscriminatory reason for suspending Wyngarden, the burden of production shifts to Wyngarden under the *McDonnell Douglas* analysis. If Wyngarden presents evidence that the proffered reason for suspending him was pretextual and such evidence can "create a reasonable inference that age was a determinative factor" for the suspension, then Wyngarden has created a fact question for the jury.

> There are at least two ways a plaintiff may demonstrate a material question of fact regarding pretext. A plaintiff may show that the employer's explanation is unworthy of credence . . . because it has no basis in fact. Alternatively, a plaintiff may show pretext by persuading the court that a [prohibited] reason more likely motivated the employer. Either route amounts to showing that a prohibited reason, rather than the employer's stated reason, actually motivated the employer's action.

*Torgerson*, 643 F.3d at 1047 (internal citations and quotation marks omitted).

Wyngarden submitted supporting documents for his claim there are at least seven younger JCOs who were "neither investigated or disciplined for

placement of informal adjustment juveniles in day treatment programs under identical circumstances, with the knowledge and approval of Wauters or his assistant." We conclude the differences in age between these JCOs and Wyngarden and the fact Wyngarden received discipline while the same supervisor did not discipline the younger JCOs, creates a factual dispute as to whether the defendants' asserted legitimate, nondiscriminatory reason for the challenged adverse employment actions were pretextual.[13]

Wyngarden also submitted affidavits disputing Wauters's statements regarding S.I.'s mother dissatisfaction with him. This evidence, combined with the above evidence, also creates a factual dispute as to whether the defendants' asserted legitimate, nondiscriminatory reason for the challenged adverse employment actions were pretextual. Wyngarden has countered the defendants' evidence with evidence sufficient to reasonably infer the reasons given for his reprimand and suspension were a pretext for age discrimination.

As noted above, Wyngarden provided documentation that younger JCOs placed informal-adjustment juveniles in day treatment programs with the approval of Wauters or his assistant. But those documents, standing alone, do not

---

[13] JCO Michael Brown wrote an email in March 2011 suggesting the pretextual nature of the adverse employment actions taken against Wyngarden:

> MR in Ottumwa again today. Compared to the rest of us, [Wyngarden] is surely being harassed, because he is being supervised so much closer. Ironic, he's the only JCO I've known in this district who is willing to go wa-a-a-y beyond job requirements to help kids and families. The rest of us are only going to do the minimum. They're persecuting him because he has exposed lies is all. Used to be integrity meant something. Wonder what would have happened if JW supervised Kathy Skewes when she was making a mockery of the Judicial Branch, and making a mockery of him? We're all paying the price for that, still to this day. Hey did anything happen to Troy for exploding in front of the Judge in chambers and throwing his book at a defense attorney?

indicate whether those JCOs had court orders permitting placement of these juveniles into treatment. Thus, the documents create another factual issue that precludes summary judgment.

For the foregoing reasons, based on the record provided, we conclude the district court erred in granting summary judgment. On the record as a whole, there are genuine fact issues for trial on the ultimate question of age discrimination.

**REVERSED AND REMANDED.**